GOODBAR *v.* BAILEY.

Opinion delivered May 13, 1893.

*Attachment—Removing property out of State.*

> Shipment by a debtor of a material part of his property out of the State, not leaving enough to pay his debts, is ground for attachment in favor of a creditor holding a matured claim, notwithstanding the property was shipped to a creditor to pay a valid debt.

Appeal from Franklin Circuit Court, Ozark District.

HUGH F. THOMASON, Judge.

*Rose, Hemingway & Rose* for appellants.

The removal of property from the State by a debtor, not leaving sufficient to pay his debts, is a ground of attachment under our statute. His purpose is immaterial. 44 Ark. 302; 54 *id.* 58; 2 McCrary, 198.

*A. S. McKennon, Geo. A. Mansfield* and *E. H. Mathes* for appellee.

The broad ground taken in 40 Ark. 157, that shipping cotton beyond the State in payment of a *bona fide*

debt does not justify an attachment, has not been abandoned in this court.    44 Ark, 302; 54 *id.* 58; 4 Fed. Rep. 294.    See 8 So. Rep. 674.

HUGHES, J.    This was an action to recover a matured debt of $570.    An attachment was sued out on the ground that the defendant had removed some, and was about to remove another, material part of his property out of the State, not leaving enough in the State to satisfy the claims of his creditors; it was levied upon a stock of merchandise and two bales of cotton.

The defendant answered, admitting the debt, and judgment was rendered for it by consent; but he controverted the grounds of attachment, and the issue thereon was tried by a jury.

The plaintiff introduced as a witness W. W. Bailey, the defendant, who testified that, at and before the commencement of this action, he was a merchant engaged in business at Altus; that he owed the plaintiff $570, and owed, in all, debts largely in excess of his property; that, prior to the suing out of the attachment, he had shipped from Altus to Hill, Fontaine & Co., at Memphis, thirty-eight bales of cotton, to be sold by them for his account, proceeds to be applied to debts that he owed them; that, on the day when the attachment was levied, he had seven bales of cotton on the platform at Altus, similarly consigned, and for the same purposes as the thirty-eight bales; that said seven bales formed a material part of his property; that he owed Hill, Fontaine & Co. debts in excess of the cotton shipped, which he promised to pay by shipping them cotton.    To the admission of the testimony of Bailey as to his being indebted to Hill, Fontaine & Co., and his intention to pay said indebtedness by shipping cotton, the plaintiff at the time objected, but the court overruled the objection, and the plaintiff excepted.

The evidence further shows that Bailey procured advances of money from Hill, Fontaine & Co. in the summer, upon his promise and agreement to ship cotton to pay the debt. He had no authority to draw against the cotton, and his intention at the time of the shipment was to apply the cotton on the debt. He mailed the bills of lading to Hill, Fontaine & Co., at date of shipment of the cotton, with instructions to apply the proceeds of the sale of the cotton to the debt he owed them.

The above is the evidence, according to the abstracts of the testimony by the appellants and appellee, so far as the same is important to understand the opinion.

The plaintiff requested the court to give the following instruction : "(1) It is admitted by the defendant that the debt of the plaintiffs in this action was due and was unpaid at the time the writ of attachment in this cause was sued out. Now, should you find from the evidence that the defendant, W. W. Bailey, was removing or was about to remove a material part of his property out of this State, not leaving sufficient of his, the said W. W. Bailey, in the State to satisfy all the debts of his creditors, then you should find for the plaintiffs and sustain the attachment ; and this you should find, notwithstanding you may believe from the evidence that the defendant was shipping his property to a commission house in Memphis, Tennessee, with whom he kept an open account, for the purpose of having the said property sold, and the proceeds of same applied to the credit of a *bona fide* debt defendant owed said commission house." Which instruction the court refused to give as requested, and the plaintiffs at the time excepted.

At the request of the defendant the court gave to the jury the following instructions, numbered one and two, to which the appellants excepted : "(1) The court instructs you that a debtor in failing circumstances has .

a right to pay any creditor, and if he ships cotton out of the State to a creditor, to be credited on his debt, then this is not in the violation of the statute, and will not justify an attachment. (2) If you find that W. W. Bailey was insolvent, and shipped cotton out of the State, not leaving enough property in this State to pay his creditors, then you will find for the plaintiffs and sustain the attachment, unless you find that he shipped the cotton directly to his creditors to be credited on his account; then you will find for the defendant and dissolve the attachment."

These are the only instructions we deem it necessary to notice in the opinion. The attachment was dissolved, the jury having found for the defendant.

The statute specifies the grounds upon which an attachment may be issued, and the ground mentioned in subdivision 6 of section 309 of Mansfield's Digest is that the defendant "is about to remove, or has removed, his property, or a material part thereof, out of this State, not leaving enough therein to satisfy the plaintiff's claim or the claim of said defendant's creditors." Under this subdivision of said section the attachment in this case was sued out, the affidavit therefor being in conformity to said section and subdivision.

The case of *Durr* v. *Hervey*, 44 Ark. 302, is very much, if not exactly, like this case in its material features; and the attachment in that case was sued out upon the same grounds, and under the same subdivision of the statute, as the attachment in this case. In that case Judge Smith, delivering the opinion of the court, said that "the judgment sustaining the attachment is clearly correct, unless the statute implies that such removal is with a fraudulent purpose. Durr's counsel contend that the clause should be construed as if it read, 'with intent to cheat, hinder or delay creditors.' This qualification does occur in several clauses of that

section, which specifies for what causes an attachment may issue, but it is absent in the sixth clause. The statute enumerates nine causes, and each of these causes is distinct and independent of any other cause. The courts have no power to interpolate terms in a statute, unless there is a necessary implication to that effect. And as an intention to defraud creditors is expressed in some of the grounds of attachment, and omitted in others, the natural inference is that the omission was designed. Hence we conclude that the principle upon which the sixth clause proceeds is the danger of loss of the debt by the removal of the defendant's property, and that it is not necessary to infer a fraudulent intent." (See also the cases cited in the opinion.)

If the statute is harsh and oppressive in its operation, it is the province of the legislature, and not of the courts, to change it. Following the decision in *Durr* v. *Hervey*, we are constrained to determine that the court erred in its refusal to give the instruction numbered one for the appellant and in giving instructions numbered one and two for the appellee, and in refusing to grant appellant's motion for a new trial; for which the judgment is reversed, and the cause is remanded for a new trial.